COMMERCIAL ENERGIES, INC., a Colorado corporation, Plaintiff,

v.

Hon. Richard B. CHENEY, Secretary of the Department of Defense; C. McCausland, Lt. Gen., Director Defense Logistics Agency; Grant H. Horn, Jr., Colonel, Deputy Director Defense Fuel Service Center; and Patricia A. Hatcher, DLA Contracting Officer, Defendants.

Civ. A. No. 90–B–1615.

United States District Court,
D. Colorado.

Sept. 24, 1990.

Gregory Kellam Scott, Denver, Colo., for plaintiff.

Paula Ray, Asst. U.S. Atty., Denver, Colo., for defendants.

## MEMORANDUM OPINION AND ORDER

BABCOCK, District Judge.

This is a review of administrative action under the Administrative Procedures Act (APA), 5 U.S.C. § 706(2). Plaintiff challenges the Defense Fuel Supply Center's (DFSC) decision to refuse to suspend a contract that is the subject of an unresolved protest before the Office of General Accounting. For the reasons discussed below plaintiff's request for relief is denied.

On May 25, 1990, the DFSC, a component of the Defense Logistics Agency, issued solicitation DLA600–90–R–0126 (the solicitation) for the supply of natural gas to 18 government installations in Illinois and Indiana. The DFSC determined that the Walsh–Healey Public Contracts Act, 41 U.S.C. § 35 (the Walsh–Healey Act), was applicable to the procurement. The Walsh–Healey Act requires contractors supplying materials, supplies, articles or equipment to the government to be manufacturers of or regular dealers in the supplies, materials, articles or equipment provided.

Plaintiff, Commercial Energies Inc. (CEI), disagreed with this determination, contending that a regulatory exemption from the Walsh–Healey Act relevant to public utilities (48 C.F.R. § 22.604–2) was applicable to the solicitation. On June 23, 1990, CEI protested the form of the solicitation to the General Accounting Office (GAO). Under its regulations, GAO is expected to issue a decision on CEI's protest by October 31, 1990. 4 C.F.R. § 21.7.

Under the Competition in Contracting Act, 31 U.S.C. § 3553(c)(1), 48 C.F.R. § 33.104(b), award of contracts is automatically stayed while GAO is considering a bid protest. Pursuant to 31 U.S.C. § 3553(c), 48 C.F.R. § 33.104(b)(1) contains an exception to the automatic stay which reads:

When the agency has received notice from GAO of a protest filed directly with GAO, a contract may not be awarded unless authorized, in accordance with agency procedures, by the head of the contracting activity, on a nondelegable basis, upon a written finding that—

(i) Urgent and compelling circumstances which significantly affect the interests of the United States will not permit awaiting the decision of GAO; and

(ii) Award is likely to occur within 30 calendar days of the written finding.

On August 31, 1990, defendant Col. Grat H. Horn, the Acting Commander of the DFSC issued a determination (the determination) stating the DFSC's intention to award contracts under the solicitation, notwithstanding CEI's protest. The determination states, in part:

In the period before GAO renders its decision, natural gas to supply the activities might be obtained from existing sources, such as [local distributing companies], however this would be financially disadvantageous to the Government. Prolonging existing arrangements with current sources of gas, in lieu of making awards under the solicitation, would bur-

den the Government with an estimated $463,000 in additional expense during October/November 1990 with no corresponding benefit.

Pursuant to [C.F.R.] 33.104(b), I find that there are urgent and compelling circumstances significantly affecting the interests of the United States that do not permit waiting for the decision of the GAO concerning CEI's protest. I also find that award is likely to occur within 30 calendar days. Therefore, notwithstanding the protest, I hereby authorize award of contracts under [the] Solicitation. . . ."

The automatic stay was lifted and the winning bidders of the solicitation were awarded contracts (solicitation contracts).

CEI argues that the finding of "urgent and compelling circumstances" was arbitrary and capricious, an abuse of agency discretion, or not in accordance with law. Accordingly, it seeks to have the determination set aside under APA § 706(2).

■ An agency's finding of urgent and compelling circumstances under C.F.R. § 33.104(b) will be upheld unless the agency did not act in accord with applicable statutes and regulations or did not have a rational basis for its decision. *Burnside–Ott Aviation Training Center, Inc. v. Department of Navy*, 35 Cont.Cas.Fed. (CCH) ¶ 75,586, 1988 WL 179796 (D.D.C.1988); *see Delta Data Systems Corp. v. Webster*, 744 F.2d 197, 204 (D.C.Cir.1984).

A court should also be mindful that:
In the field of government procurement the courts must . . . heed the admonition that their authority to vacate and enjoin action that is illegal must be exercised with restraint lest the courts fall into the error of supposing that they may revise "action simply because [they] happen to think it ill-considered, or to represent the less appealing alternative solution available."

*M. Steinthal and Co. v. Seamans*, 455 F.2d 1289, 1298–99 (D.C.Cir.1971) (quoting *Calcutta East Coast Conference v. FMC*, 399 F.2d 994, 997 (D.C.Cir.1968)).

CEI's first argument is that, because the DFSC considered pricing for only October and November of 1990, its determination of "urgent and compelling circumstances" is irrational. CEI argues that the DFSC had the option to extend CEI's gas contract through March of 1991, and, had it done so, the government could have actually saved money. Thus, CEI argues that, by taking only October and November into account, the DFSC acted irrationally. I disagree.

■ Here the DFSC was merely deciding whether to lift the automatic stay. The stay was lifted on August 31, 1990. If the stay had not been lifted, it would have expired upon the decision of the GAO, which is due by October 31, 1990. Because gas companies are typically given one month to prepare for delivery, service under contracts awarded after the stay could begin one month after the GAO decision, or approximately December 1, 1990. Only the months of October and November are thus affected by the stay. Consequently, using price estimations for only October and November was not irrational.

■ CEI next challenges DFSC's basis for estimating the $463,000 in savings. To compute the difference in cost for October and November, the DFSC first calculated the cost for these months under the pre-solicitation contracts. This calculation was based on the estimated use at each installation multiplied by the price the government was paying in August of 1990. Next, the DFSC estimated the price it would be charged for October and November under the solicitation contracts. This calculation was based on the estimated use at each installation multiplied by the prices of the solicitation contracts as of August 31, 1990. These prices were presumably based on the August indexed price, since the October price was not published until October 5, 1990. Based on the August, 1990 gas price, the DFSC determined that the solicitation contracts would save the government $463,000.

■ CEI argues that using the August price is irrational because the gas prices for October and November, heating-season months, will be substantially greater than the August price. To the contrary, the

DFSC was merely estimating the *difference* in cost between the pre-solicitation contracts and the solicitation contracts. It was rational for the DFSC to assume that the price *differential* in August would remain constant through October and November.

CEI argues that the DFSC's action should be set aside for failing to consider the benefit of awarding a contract to a small, disadvantaged business. The DFSC found that keeping the automatic stay in effect "would burden the Government with an estimated $463,000 in additional expense during October/November 1990 with no corresponding benefit." CEI argues that there is a benefit because the contract would be performed by a small, disadvantaged business. Congress has set a national goal of awarding 5% of all Department of Defense contracts to small, disadvantaged businesses. *See* National Defense Authorization Act for Fiscal Year 1987 § 1207, Pub.L. No. 99–661, 100 Stat. 3816, 3973 (1986).

The DFSC had determined based on the Walsh–Healey Act that, for the contracts at issue, CEI was not eligible for the preference typically given to small, disadvantaged businesses. Based on this determination, which is not in issue here, it was thus rational to conclude that granting such preferences would not be beneficial. I therefore conclude that the DFSC's determination that the stay would burden the government with an estimated $463,000 in additional expense with no corresponding benefit was rational.

The issue remains whether the DFSC abused its discretion in determining that the additional cost to the government constitutes "urgent and compelling circumstances" under 31 U.S.C. § 3553(c)(2), 48 C.F.R. § 33.104(b). I cannot say that the DFSC was irrational in determining that saving an estimated $463,000 presented an urgent and compelling circumstance.

Lastly CEI argues that the DFSC's determination was "without observance of procedure required by law" and thus in violation of APA § 706(2)(B). CEI has presented no basis for this assertion.

I conclude that the DFSC's determination was in accord with applicable statutes and regulations and was rational. Accordingly, the agency determination was not arbitrary or capricious, was not an abuse of discretion, and was in accordance with law. *See* APA § 706(2)(A).

In so far as CEI's complaint may seek review of the DFSC's decision concerning the applicability of the Walsh–Healey Act to the solicitation, this issue is now before the GAO. Therefore, it is not subject to judicial review. APA § 704.

Accordingly, it is ORDERED that:

(1) the Defense Fuel Service Center's determination of "urgent and compelling circumstances" is AFFIRMED;

(2) CEI's requests for relief are DENIED; and

(3) final judgment enter, each party to bear its own costs.